ROBERT L. BLAND, Judge.
Claimant is engaged in the sale of lumber and builders’ supplies, at wholesale and retail, in the city of Elkins, Randolph county, West Virginia. By requisition in writing bearing date on the 16th day of September 1941, after quotation as to price and bid duly submitted, Honorable J. Buhl Shahan, state director of purchases, authorized and directed said Elkins Builders Supply Company to deliver to the West Virginia schools for the deaf and the blind, at Romney, West Virginia, 2,000 feet of black walnut lumber, without mention of grade or specification, at the price of $90.00 per thousand feet, the total purchase price being $180.00. In pursuance of said requisition claimant delivered said lumber, by truck, to said West Virginia schools for the deaf and the blind, at Romney, West Virginia, a distance of one hundred miles from Elkins, on the 23rd day of September 1941. The delivery was made by H. T. Beal, *265 an employee of and truck driver for claimant, who had with him at the time of delivery the original purchase order for said lumber. The delivery and receipt of said lumber was evidenced by this endorsement made on said order: “W. Va. School for the Deaf, by Evan Ellis.”
The superintendent of the West Virginia schools for the deaf and the blind was not at the institution at the time of the delivery of the lumber, but it was unloaded by Evan Ellis and James R. Thompson, both employees of the institution, and H. T. Beal, the truck driver, and placed in the basement of the Mechanical Arts building. Mr. Ellis is a deaf teacher and cabinet maker, who has been with the institution for twenty-three years. Mr. Thompson became connected with the schools in July, 1941, and is employed as a carpenter and teacher in the wood shop. Both men work with lumber there. After the superintendent’s return to the institution he was informed by either Mr. Ellis or Mr. Thompson that the lumber was of inferior quality. He thereupon directed said Ellis and Thompson to measure the lumber to determine what part of it could be used. The lumber was graded by Ellis and Thompson, who reported that 385 feet of the 2,000 feet was unusable. Mr. Harris, the superintendent, inspected the lumber and determined that in its entirety it was not suitable for the use to which it was intended to be devoted, and that certain portions of it were crooked, split and rotten. He thereupon notified the department of purchases of the condition of the lumber and the disposition he would like to have made of it. He wanted a “stop order” and was informed that such order had been issued. His first communication with the department of purchases was by telephone, and later by letter.
On October 3, 1941, the department of purchases addressed a letter to claimant whereby it attempted to rescind and cancel the purchase which it had made of the lumber in question and requested that the said lumber be removed from the institution. Claimant, taking the position that it did not know when or where a re-sale of said lumber could be made if compelled to comply with the request of the department of purchases and remove the same, declined to reclaim said lumber *266 from said West Virginia schools for the deaf and the Mind and filed its claim in this court for the purpose of obtaining an award for the contract purchase price of said 2,000 feet of black walnut lumber.
Upon the investigation and hearing of said claim it was shown that the lumber delivered was of standard lengths and widths. Standard lengths in hardwood run from eight to sixteen feet. It was, we think, satisfactorily shown by the evidence that at least fifty per cent of the lumber in question was clear black walnut. The balance of the shipment was of a lower grade, but suitable for use in general furniture making. The lumber was what is generally known or termed “log run.” This lower grade could be cut into small pieces and used by gluing them together, as is customary in the making of tables, chairs and other furniture.
It appears from the record that prior to the appointment in July 1941, of Stanley R. Harris as superintendent of the West Virginia schools for the deaf and the blind, and under the former administration of former superintendent, Dr. Krause, a man named Ed Doman, who conducted a sawmill and dealt in lumber at Romney, proposed to sell to the institution 2000 feet of black walnut lumber, and guarantee the grade thereof, at $30.00 per thousand feet. Dr. Krause caused requisition to be made for this Doman lumber and forwarded to the department of purchases. On this requisition a notation was endorsed as follows: “It may be secured from Ed Doman, of Romney, West Virginia, for use in the cabinet making shop.” The department of purchases sent to Mr. Doman a request to bid on this lumber, but received no reply from him. The department then “went shopping around” and finally got a bid from the Elkins Builders Supply Company, which bid was accepted and a requisition made for the lumber as above stated. The purchase order given to claimant did not contain the notation “for use in the cabinet making shop.”
When claimant delivered 2000 feet of black walnut lumber to the schools for the deaf and the blind, Evan Ellis evidently thought it was what he supposed had been purchased from Ed Doman. Superintendent Harris labored under the impression *267 that the Doman lumber had been purchased as requisitioned for by his predecessor, former President Krause. He did not understand that the purchase made for the institution by the department of purchases was an entirely different transaction. In the one instance the use for which the lumber was intended was indicated, in the other it was not. Out of these different transactions misapprehension and confusion resulted. In the former case the quality of the lumber was to be guaranteed. In the latter there was no mention of quality or grade.
But in view of all the evidence, the probative value of which we have carefully considered, we are of opinion that claimant furnished 2000 feet of black walnut lumber suitable for use in furniture making and for general hard wood-working purposes. Our conviction in this respect is confirmed by a conversation between claimant’s truck driver and the institution’s cabinet maker, Evan Ellis, at the time of the delivery of the lumber. Ellis asked the truck driver if claimant had “the order for a thousand feet of choice walnut.” The truck driver replied that his company had been requested to bid on it, but did not think its walnut was good enough. Ellis then said, referring to the 2000 feet of black walnut delivered to the institution by Claimant, “You could have picked that, graded that out of this that you got.” That statement was made at the time that Mr. Ellis was assisting in unloading the lumber and had opportunity to see and discern its quality.
We appreciate the circumstances under which superintendent Harris called the state department of purchases and requested a cancellation of the order made for the purchase of the lumber. He was a new man at the institution and conscious of the responsibilities of his position. He believed that lumber had been delivered to the institution that was not the lumber that had been ordered and intended to be purchased by his predecessor in office. He acted as a careful, prudent and conscientious official would be supposed to act under the circumstances, but it is manifest that he labored under a misapprehension as to the actual facts in the premises.
The evidence shows that the claimant made a bid of $90.00 per thousand feet as the price for which it would sell 2000 *268 feet of black walnut lumber to the state for the West Virginia schools for the deaf and the blind, and that the state department of purchases accepted said bid and issued its purchase order for said 2000 feet of black walnut lumber at the price of $90.00 per thousand feet. A binding contract was created between the claimant and the state. Claimant complied with its contract, and has not been paid the contract price for the lumber so furnished and delivered by it.
Where the state department of purchases requests bids for furnishing to a state institution 2000 feet of black walnut lumber, without specification as to quality, and a dealer agrees to furnish same at the price of $90.00 per thousand feet, and thereafter said department of purchases makes its requisition for such lumber, in pursuance of such bid, and said lumber is furnished and delivered to the state institution for whose benefit it was purchased, in accordance with such bid and requisition, and it is shown to be fifty per cent clear black walnut lumber and the balance of lower grade but suitable for use in making furniture and for other wood-working purposes, such order cannot be canceled for the reason that said lumber was of inferior quality, and the lumber so furnished and delivered will be required to be paid for at. (he contract price.
It appears from the record that the West Virginia schools for the deaf and the blind had at the time that the state department of purchases issued its order for the purchase from claimant of said 2000 feet of black walnut lumber for the benefit of said institution, and now has, funds to its credit, out of the appropriation made for said institution for the current biennium, sufficient, to pay the contract, price, to-wit, $180.00 for said 2000 feet of black walnut, lumber, and that t! >re has been no lapse of said appropriation. The claim in question arises under such appropriation, and we ascertain and find that the award made by the court for the payment thereof should be paid out, of said appropriation.
An award is now made in favor of claimant, Elkins Builders Supply Company, for the sum of one hundred and eighty dollars ($180.00), payable out of the appropriation made for the West Virginia schools for the deaf and the blind for the current biennium period.